1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

                                    Plaintiff,

        vs.

DEANDRE RAMON SANDERS,

                                    Defendant.

CASE NO. 09cr3606 WQH

ORDER

HAYES, Judge:

        The matter before the Court is the motion (Doc. #28) filed by Plaintiff United States of America for an order to the United States Medical Center for Federal Prisoners at Springfield, Missouri (FMC Springfield) to involuntarily medicate Defendant Deandre Ramon Sanders.

## BACKGROUND

        On July 31, 2009, Defendant was arrested and subsequently charged with bank robbery in violation of 18 U.S.C. § 2113(a).

        On August 13, 2009, United States Magistrate Judge Nita L. Stormes ordered an evaluation of Defendant's competency to stand trial.

        In a report dated October 15, 2009, Dr. Gordon Zilberman, Ph.D., Forensic Psychologist, concluded that Defendant suffers from paranoid schizophrenia and mild mental retardation. Dr. Zilberman concluded that there was very strong objective evidence to indicate that Defendant was cognitively impaired and that Defendant's ability to properly assist counsel was significantly affected.

        On October 22, 2009, Magistrate Judge Stormes conducted a competency hearing and

1    received into evidence the report from Dr. Zilberman.  Magistrate Judge Stormes found that

2    Defendant is "presently suffering from a mental disease or defect and is thereby rendered

3    mentally incompetent to the extent that defendant is unable to understand the nature and

4    consequences of these criminal proceedings or to assist properly in the defense of this case."

5    (Doc. # 19).   Magistrate Judge Stormes ordered the Defendant committed to the custody of

6    the Attorney General for hospitalization pursuant to 18 USC § 4241(d) in order to help clarify

7    his diagnostic picture and to ensure his competency to stand trial.  Defendant was transferred

8    to the FMC Springfield for treatment and a determination of whether he could be restored to

9    competency.

10          On February 16, 2010, the warden at the FMC Springfield sent a forensic mental health

11   evaluation to Magistrate Judge Stormes which included two reports.  Forensic Psychologist

12   Dr. Christina Pietz, Ph.D., wrote in a report dated February 1, 2010 that the Defendant suffers

13   from paranoid schizophrenia and that the Defendant was not competent to proceed with his

14   case. Dr. Pietz states that the Defendant presents as delusional and hoes not appear to have a

15   rational knowledge of the charges against him.   Dr. Pietz concludes that antipsychotic

16   medication is needed to restore the Defendant to competency.  Dr. Pietz states in her report as

17   follows:

18          Since his arrival, he has insisted he is not mentally ill, that others misinterpret
            his uncooperative behavior as a symptom of a mental illness, and he refuses to
19          consider taking medication.   Mr. Sanders refuses to answer most questions
            posed to him.  He will not answer questions posed about his mental health
20          history or questions pertaining to his current legal predicament.

21   (Exhibit 2, page 2).  Dr. Pietz recommends that a *Sell* hearing be held and opines that there is

22   a substantial likelihood that Defendant will be restored to competency with proper medication;

23   that proposed treatment would be substantially unlikely to have side effects that would

24   interfere significantly with Defendant's ability to assist his counsel in conducting a defense;

25   that Defendant's psychotic symptoms are chronic and unlikely to improve in the forseeable

26   future without antipsychotic medication; that less intrusive alternatives are unlikely to restore

27   Defendant's competency; and that administering antipsychotic medication is medically

28   appropriate in this case.

In a psychiatric report dated February 10, 2010, Robert G. Sarrazin, M.D., Chief of Psychiatry at FMC Springfield, opines that there is a substantial likelihood that Defendant will be restored to competency with antipsychotic medication.  Dr. Sarrazin discusses in detail the Defendant's  behavior at the hospital, his current medical condition, and his diagnosis of schizophrenia.   Dr. Sarrazin discusses Defendant's past treatment with antipsychotic medication detailed in the medical records noting that "he has responded positively to these medications without ontoward side effects." (Exhibit 3, page 4).  Dr. Sarrazin's report presents data on a number of issues including: competency restoration of psychotic defendants; treatment response and resistance in schizophrenia; patient perception of previous involuntary medication; cognitive side effects and trial related abilities; management of side effects; efficacy of psychotherapy for treating schizophrenia; and the medical appropriateness of antipsychotic medication.  Dr. Sarrazin's report proposes a detailed treatment plan for the Defendant based upon his past psychiatric history and his current medical condition.  Dr. Sarrazin offers his opinion that there is a substantial probability that Defendant's competency status can be restored with a period of treatment with antipsychotic medication and recommends that the Court "authorize the involuntary administration of antipsychotic medication as described in the proposed treatment plan."  (Exhibit 3, page 15).

On March 15, 2010, the Government moved the Court for an order to authorize the medical staff at FMC Springfield to involuntarily medicate the Defendant in order to restore him to competency.  The Government contends that Defendant is charged with a serious crime and that the forensic mental health evaluation shows that involuntarily medicating the Defendant would significantly further an important governmental interest by rendering the Defendant competent to stand trial and assist his counsel in his defense; and that less intrusive means are unlikely to achieve substantially the same result.  The Government asserts that clear and convincing evidence in this record shows a substantial probability that Defendant's competency status can be restored by a period of treatment with antipsychotic medication as proposed by Dr. Sarrazin, that any side effects would be manageable, and that antipsychotic medication is medically appropriate for this Defendant.  The Government moves the Court for

an order allowing the involuntary medication of the Defendant as outlined on pages 13-15 of the report of Dr. Sarrazin.

Counsel for the Defendant states that he "knows of no reason, other than Mr. Sanders' objection to taking medication voluntarily not to order the involuntary medication of Mr. Sanders." (Doc. # 31, page 2). Counsel for Defendant recognizes that the Defendant "suffers from mental retardation, is a paranoid schizophrenic, and under the best of circumstances it is questionable whether Mr. Sanders could be competent to stand trial." *Id*. Counsel for Defendant agrees that "it is clear he will remain incompetent to communicate with and assist counsel in the preparation and presentation of his case and will not be able to understand the nature of the proceedings against him." *Id*.

On March 23, 2010, this Court conducted an evidentiary hearing in order to provide both Defendant and the Government with an opportunity to present evidence and argument. The Court heard testimony from Forensic Psychologist Pietz and Chief of Psychiatry Dr. Sarrazin. Pietz and Sarrazin testified in detail as to the conclusions set forth in their earlier reports. Pietz and Sarrazin testified that they have had daily contact with Defendant and that he continues to refuse medication and treatment of any kind. Pietz and Sarrazin testified that based upon their extensive experience with other patients at the medical center and their specific experience with Defendant in this case, Defendant would be restored to competence with proper medication. Dr. Sarrazin testified that Defendant's behavior continues disorganized and delusional, and that Defendant is clearly suffering from schizophrenia. Dr. Sarrazin testified that anti-psychotic medications are the treatment of choice for psychotic illnesses and that the proposed treatment outlined in his report is medically appropriate for this Defendant.

## APPLICABLE LAW

18 U.S.C. Section 4241(d) provides:

If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable

facility -

    (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the forseeable future he will attain the capacity to permit trial to proceed; and

    (2) for an additional reasonable period of time until -

    (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional time he will attain the capacity to permit the trial to proceed; or

    (B) the pending charges against him are disposed of according to law; whichever is earlier.

If, at the time period specified, it is determined that the defendant's mental condition has not so improved as to permit proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

The Supreme Court has recognized a "liberty interest in freedom from unwanted anti-psychotic drugs." *Riggins v. Nevada*, 540 U.S. 127, 137, 112 S.Ct. 1810 (1992); *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028 (1990). In *Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174 (2003), the Supreme Court concluded that

the Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests. This standard will permit involuntary administration of drugs solely for trial competence purposes in certain instances. But those instances may be rare.

539 U.S. at 179-180. The Supreme Court set out the following four conditions that must be satisfied before a court can order involuntary medication to render a defendant competent to stand trial: (1) "the court must find that *important* governmental interests are at stake"; (2) "the court must concludes that involuntary medication will *significantly further* those [government] interests"; (3) "the court must conclude that involuntary medication is *necessary* to further those interests"; and (4) "the court must conclude that administration of the drugs is *medically appropriate,* i.e., in the patient's best interest in light of his medical condition." *Id.* at 180-181. The Supreme Court explained in *Sell* that the factors above should help the court make the "ultimate constitutionally required judgment. Has the government, in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of a particular course of antipsychotic drug treatment, shown a need for that treatment sufficiently important to

1    overcome the individual's protected interest in refusing it?" *Id*. at 183.

2           In *United States v. Williams*, 356 F.3d 1045, 1056 (9th Cir. 2004), the Court of Appeals

3    for the Ninth Circuit concluded that "the unique nature of involuntary antipsychotic medication

4    and the attendant liberty interest require that imposition of such a condition [involuntary

5    medication as a condition of supervised release] occur only on a medically- informed record."

6    "[A] Sell hearing is required to consider specific drugs, their unique side effects and their

7    medical appropriateness. Specificity as to the medications to be administered is critical."

8    *United States v. Rivera-Guerrero*, 426 F.3d 1130, 1140 (9th Cir. 2005).  An evidentiary

9    hearing is required and the standard of proof in a *Sell* hearing is clear and convincing evidence.

10   *See United States v. Bradley*, 417 F.3d 1107, 1114 (10th Cir. 2005); *United States v. Gomes*,

11   387 F.3d 157, 160 (2nd Cir. 2004).  In the event the Court finds that the facts of a case warrant

12   involuntary medication, "a *Sell* order must provide at least some limitations on the medications

13   that may be administered and the maximum dosages and duration of treatment.  At a minimum,

14   to pass muster under *Sell*, the district court's order must identify: (1) the specific medication

15   or range of medications that the treating physician are permitted to use in their treatment of the

16   defendant, (2) the maximum dosages that may be administered, and (3) the duration of time

17   that involuntary treatment of the defendant may continue before the treating physicians are

18   required to report back to the court on the defendant's mental condition and progress." *United*

19   *States v. Hernandez-Vasquez*, 513 F.3d 908, 916-917 (9th Cir. 2008).

20                                  **DISCUSSION**

21          The record in this case establishes by clear and convincing evidence that Defendant

22   suffers from paranoid schizophrenia, that Defendant is not currently able to assist properly in

23   his defense, and that Defendant will not likely attain the capacity to proceed to trial without

24   appropriate medication.  The Government concedes that there is no evidence in this case to

25   support an order of involuntary medication on the grounds of dangerousness under *Washington*

26   *v. Harper* and seeks an order for involuntary medication based only upon conditions set forth

27   by the Supreme Court in *Sell*.  The record in this case indicates that a hearing was held at the

28   FMC Springfield on January 21, 2010 in order to determine whether involuntarily medication

was approved on grounds of dangerousness to himself and others. The hearing psychiatrist found that Defendant was suffering from severe mental illness, that he has not exhibited evidence of dangerousness toward others or self in the correctional setting, and that Bureau of Prisons guidelines preclude the administration of psychotropic medication against his will. This Court concludes that no other basis for forcibly administering medication is reasonably available and that the proper inquiry in this case is made pursuant to the conditions in *Sell*. *See Hernandez-Vasquez*, 513 F.3d 914. ("[P]rior to undertaking the *Sell* inquiry, a district court should make a specific determination on the record that no other basis for forcibly administering medication is reasonably available."). The Court must evaluate the four conditions in *Sell* when seeking to determine whether involuntary administration of drugs is necessary to further the particular governmental interest in rendering the Defendant competent to stand trial and not for a different purpose related to "the individual's dangerousness, or purposes related to the individual's own interests where refusal to take drugs puts his health gravely at risk." *Sell*, 539 U.S. at 182.

**(1) *"important* governmental interests are at stake"**

"The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property. In both instances the Government seeks to protect through the application of the criminal law the basic human need for security." *Sell*, 539 U.S. at 180. The Court must "consider the facts of the individual case in evaluating the Government's interest in prosecution." *Id.*

In this case, the Defendant is charged with bank robbery in violation of 18 U.S.C. § 2113(a) and faces a guideline sentence of 41-51 months. This is a substantial sentence and a serious criminal charge. Defendant has been in custody for less than eight months and the length of his incarceration to date does not lessen the importance of the Government's interest in proceeding with this prosecution. The probable cause statement attached to the Complaint in this case indicates that the Defendant was identified by two bank tellers as the individual who entered the bank wearing a blue bandana pulled up over his nose and a black beanie cap

pulled down over his forehead with a light tan pillow case in his hand.  The individual ordered one teller and then another teller to "Give me your money."  (Doc. #1).  The Defendant was apprehended down the street from the bank with $2,666 in a light tan pillow case.  At the time of his arrest, the police officers found four pairs of hinged handcuffs in the Defendant's pockets.  Defendant has a prior conviction for misdemeanor petty theft on October 5, 2004. Defendant was arrested for second degree burglary on March 29, 2003, petty theft on February 24, 2005, and vehicular theft on April 21, 2005.

The Court finds that the Government has an important governmental interest in prosecuting this Defendant for the serious criminal charge of bank robbery.  The Government has strong evidence that the Defendant demanded money from two bank tellers attempting to conceal his identity and carrying four pairs of handcuffs.  Defendant faces a lengthy period of incarceration and has not been in custody for a significant portion of the time that he is potentially facing.  The Government has a significant interest in restoring Defendant to competency to address these serious charges and to protect the public from future actions of this Defendant.

**2) "involuntary medication will *significantly further* those [government] interests";**

The Court must find that "the administration of drugs is substantially likely to render the defendant competent to stand trial.  At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair."  *Sell,* 539 U.S. at 181.

The Court has examined the specific course of treatment proposed for this Defendant, the side effects and the medical appropriateness of the medications proposed.  *See Guerrero,* 426 F.3d at 1140.  Based upon their training and experience, the evaluators at FMC Springfield conclude that the proposed course of treatment is likely to return Defendant to competency with the proposed course of treatment significantly advancing the important governmental interests.  The record in this case shows that Defendant has been effectively and safely treated with the antipsychotic medication in the proposed treatment plan at outpatient and residential

facilities in 2006 and in 2009 in the San Diego area prior to the charges in this case; that the Defendant responded positively to these medications without untoward side effects; and that Defendant was able to live successfully in a residential care environment while on the proposed medication.  The record further shows that the proposed course of treatment would take place in a closely monitored environment with an expectation that Defendant would return to competency.  There are no facts in this record which would suggest that this Defendant would not respond positively to the proposed course of treatment significantly furthering the governmental interests of rendering him competent to stand trial in a timely fashion.

The Court concludes that there is clear and convincing evidence in the record that the involuntary administration of antipsychotic medication proposed in Dr. Sarrazin's forensic mental health evaluation dated February 16, 2010 at pages 13-15 is substantially likely to render Defendant competent to stand trial and that the proposed treatment is substantially unlikely to cause side effects that will interfere significantly with Defendant's ability to assist counsel in conducting a trial defense.

**3) "involuntary medication is *necessary* to further those interests"**

"The court must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results ... and the court must consider less intrusive means for administering the drugs, e.g., a court order to the defendant backed by the contempt power, before considering more intrusive methods."  *Sell,* 539 U.S. at 181.

Defendant has insisted that he is not mentally ill and refused to consider taking any type of psychotropic medication prior to and since his arrival at FMC Springfield.  The evaluators state that Defendant did not participate in the evaluation and often refused to be interviewed and that the Defendant did not provide any history to the evaluators.  The record shows that the Defendant's mental illness is chronic and has persisted over a lengthy period of time without proper medication.  The evaluators conclude that it is unlikely that this Defendant could be returned to competency without the Court ordering the proposed treatment with antipsychotic medication.

Dr. Sarrazin states in his report that past debates in the psychiatric community regarding

the relative value of drugs versus psychotherapy for the treatment of schizophrenia "collapsed ... under the weight of the data.  Lack of efficacy weighed against a sole reliance on psychotherapy." (Exhibit 3 at page 10-11).  Dr. Pietz and Dr. Sarrazin have daily access to Defendant and conclude that spontaneous improvement is unlikely and that less intrusive treatments are unlikely to achieve the results necessary to render Defendant competent to face the serious charges against him.  The record establishes that Defendant cannot be engaged in any type of therapeutic treatment, that Defendant has been unwilling or unable to voluntarily follow through with prescribed medication on a regular basis, and that treatment on a sporadic basis has not been effective.  There are no facts or circumstances which would suggest that a court order to Defendant would be successful or that sporadic treatment would return Defendant to competency.

**4) "administering the drug is medically appropriate"**

"[T]he Court must conclude that administration of the drugs is *medically appropriate*, *i.e.*, in the patient's best medical interest in light of his medical condition.  The specific kinds of drugs at issue may matter here as elsewhere.  Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." *Sell,* 539 U.S. at 181.

The mental health evaluators conclude, based upon their extensive experience with mentally ill individuals as well as their specific evaluation of this Defendant, that Defendant's psychotic symptoms are chronic, and that treatment with antipsychotic medication is the accepted and appropriate treatment for this Defendant.  The treatment proposed by Dr. Sarrazin on pages 13-15 of his February 10, 2010 report identifies the specific medication, the dosages, and the duration appropriate for the treatment of this Defendant as required under a *Sell* order.  The Court concludes that the mental health evaluations establish by clear and convincing evidence that the administration of the proposed course of treatment is in the Defendant's best interest in light of his medical condition.  The Court finds that this factor heavily favors granting an order for the proposed involuntary medication.  This Defendant suffers from chronic schizophrenia which will not likely be controlled without medication. The proposed medication is widely available standard treatment for persons suffering from schizophrenia.

The Defendant is charged with committing a serious bank robbery and the record in this case establishes that the Defendant will very likely remain incompetent to understand the nature and consequences of the proceedings against him or to assist properly in his defense without the proposed treatment. Based upon all information in this record, this Court finds that there is clear and convincing evidence that administering the proposed course of treatment is medically appropriate for this Defendant based upon his medical condition.

## CONCLUSION

Having considered all of the evidence in this record, this Court finds that the Government has shown by clear and convincing evidence a need for the proposed course of treatment sufficiently important to overcome this Defendant's protected interest in refusing treatment, in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of the particular course of treatment proposed for this Defendant. The Defendant is presently suffering from a mental disease or defect rending him mentally incompetent to the extent that he is unable to understand nature and consequences of the proceedings against him or to assist properly in his defense. The Court finds that there is a substantial probability that Defendant's mental condition will improve within a reasonable period of time with the treatment proposed by Dr. Sarrazin on pages 13-15 of his February 10, 2010 report and that Defendant will attain the capacity to permit the proceedings to go forward.

IT IS HEREBY ORDERED that:

1) Plaintiff's motion for an order to the FMC Springfield to involuntarily medicate Defendant as set forth in the Forsensic Evaluation dated February 10, 2010 (Doc. #28) is granted;

2) the Attorney General is authorized pursuant to 18 U.S.C. § 4241(d)(2)(A) to hospitalize Defendant in the FMC Springfield for a further reasonable period not to exceed four months from the date of this Order;

3) the medical staff at the FMC Springfield is authorized to administer the treatment plan proposed on pages 13 through 15 of the report of Dr. Sarrazin dated February 10, 2010 to Defendant until further order of this Court;

09cr3606WQH

4) the medical staff at the FMC Springfield is authorized to involuntarily perform any physical and laboratory assessments and monitoring which are clinically indicated to monitor medication side effects as described in the proposed treatment plan on pages 13-15 of the February 10, 2010 report of Dr. Sarrazin, in the event that the Defendant refuses to consent to these procedures;

5) the medical staff at FMC Springfield shall provide the Court and all counsel with a written report no later than June 8, 2010 detailing the specific course of Defendant's treatment, the Defendant's current medical condition and progress toward competency, and the anticipated duration of time that the treatment of Defendant will be required;

6) all counsel shall appear at a status hearing on Friday June 11, 2010 at 9:30 a.m. before this Court in order to review the progress of Defendant's treatment and determine his current mental condition; to address the probability that continued treatment of the Defendant is likely to result in his return to competency; and to determine whether the Court should order treatment to continue and, if so, for what period of time;

7) the period of time until Defendant is found mentally competent to stand trial is excludable under the provisions of the Speedy Trial Act, 18 U.S.C. § 3161(h)(4).

United States District Judge

DATED: March 25, 2010

**WILLIAM Q. HAYES**
United States District Judge

- 12 -

09cr3606WQH